UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD MILLS,

                              Plaintiff,    **DECISION AND ORDER**
                                            **No. 1:16-cv-00984-MAT**

              -vs-

ROBERT C. NOONAN, Genesee
County, RANDOLPH ZICKL,
WILLIAM ZICKL, ROBERT ZICKL,
LAWRENCE FRIEDMAN, DAVID GANN,
CHARLES ZAMBTIO, JOHN RIZZO,
DAVID MORABITO, STATE OF NEW
YORK (Injunctive Relief)

_____
                              Defendants.
_____

## INTRODUCTION

Pro se plaintiff Richard Mills ("Plaintiff"), an inmate at
Five Points Correctional Facility, has filed a complaint (Dkt #1)
alleging multiple violations of the United States Constitution; the
New York State Constitution; various Federal statutes; and New York
State common law and statutory law. Plaintiff alleges that the
named defendants have repeatedly denied him of his constitutional
rights in relation to his 2004 conviction in Genesee County Court,
as well as various non-criminal state court proceedings in which he
was a party.

Plaintiff also has filed a motion to proceed in forma pauperis
(Dkt #2) and a motion for discovery (Dkt #3) pursuant to
Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure
("F.R.C.P.") and Rule 5.2 of the Local Rules of Civil Procedure for
the Western District of New York.

The Court has reviewed Plaintiff's pleadings in view of the relevant provisions of the Prison Litigation Reform Act, Pub. L. 104-134, 110 Stat. 1321 ("PLRA"), 28 U.S.C. § 1915 et seq. For the reasons set forth below, Plaintiff's IFP motion is denied. Plaintiff's complaint is dismissed with prejudice. Plaintiff's miscellaneous motions are denied as moot.

## THE IFP MOTION

"Prisoner-plaintiffs who have accumulated three strikes are prohibited by the PLRA from bringing further actions or appeals in forma pauperis." Harris v. City of N.Y., 607 F.3d 18, 21 (2d Cir. 2010) (citing 28 U.S.C. § 1915(g)). Plaintiff has been subject to the three strikes rule, 28 U.S.C. § 1915(g), since at least 2007.[1] Because three or more of his lawsuits while he has been incarcerated have been dismissed as "frivolous [or] malicious or [for] fail[ure] to state a claim upon which relief may be granted," Plaintiff is ineligible by statute to file in forma pauperis ("IFP") "unless [he] is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g); see also Pettus v. Morgenthau, 554 F.3d 293, 295 (2d Cir. 2009). In this case, he has filed a motion to proceed IFP and a Prison Authorization pursuant to 28 U.S.C.

---

[1]

    Plaintiff has had at least three cases dismissed by this Court for strike reasons. (See Order at 2, Dkt #3 in Mills v. Bryan, et al., 1:06-cv-00751-MAT (W.D.N.Y. May 24, 2007) (citing Mills v. Noonan, et al., No. 1:04-cv-00142A (W.D.N.Y. May 10, 2004); Mills v. Genesee County, et al., 1:04-cv-00989A (W.D.N.Y. Oct. 5, 2005); Mills v. Appellate Division Fourth Department, et al., 1:05-cv-00612A (W.D.N.Y. May 7, 2006))).

§ 1915(a)-(b), but has not attempted to allege that he is in "imminent danger of serious physical injury[,]" 28 U.S.C. § 1915(g).

Nonetheless, in the interest of judicial economy, the Court will assume _arguendo_ that Plaintiff is entitled to proceed IFP, and will review the complaint. As discussed further below, the Court finds that the complaint does not survive initial screening under 28 U.S.C. § 1915A.

## THE COMPLAINT

## I.   Standard of Review under 28 U.S.C. § 1915A

Under 28 U.S.C. § 1915A ("Section 1915A"), a district court must screen prisoners' civil complaints that name government officials or entities as defendants, and it must dismiss such complaints if certain criteria are met. _E.g._, _Carr v. Dvorin_, 171 F.3d 115, 116 (2d Cir. 1999) (_per curiam_) (discussing 28 U.S.C. § 1915A). Section 1915A provides that the district court must perform this screening as early as possible in the lawsuit. _See_ 28 U.S.C. § 1915A ("The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.").

Upon initial screening, "the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint,

-3-

if the complaint-(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A. "An action is 'frivolous' for § 1915(e) purposes if it has no arguable basis in law or fact, as is the case if it is based on an 'indisputably meritless legal theory.'" Montero v. Travis, 171 F.3d 757, 759 (2d Cir. 1999) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)).

"The language of the statute does not distinguish between prisoners who proceed in forma pauperis and prisoners who pay the requisite filing fee." Carr, 171 F.3d at 116.

## II. Analysis

### A. Parties Sued by Plaintiff

Plaintiff has sued Genesee County ("the County") and the State of New York ("the State"). In addition, he has named Honorable Robert C. Noonan ("Judge Noonan"), whom he states is an Acting Justice of New York State Supreme Court Judge, Genesee County, and a Genesee County Court Judge. Plaintiff has sued Randolph Zickl, William Zickl, and Robert Zickl (collectively, "the Zickl Brothers"). He asserts that Randolph Zickl "was the assigned counsel administrator for Genesee County"; William Zickl "was and/or is a Assistant District Attorney in Genesee County"; and Robert Zickl "was and/or is a prosecutor of Genesee County[.]" (Complaint ("Comp.") (Dkt #1) (¶¶ 7-9). Plaintiff has sued Lawrence

Friedman ("Friedman"), whom he states "is and/or was the Head District Attorney" of Genesee County; David Gann ("Gann"), who "was and/or is a prosecutor for Genesee County"; Charles Zambito ("Zambito"), who "was and/or is the Genesee County Attorney"; John Rizzo ("Rizzo") who also "was and/or is the Genesee County Attorney"; and David Morabito ("Morabito"), who was one of the attorneys assigned to represent Plaintiff during his 2004 criminal proceeding. (Comp. ¶¶ 10-14).

## B. The Federal Statutes Cited by Plaintiff

In his "Statement of Jurisdiction," Plaintiff asserts that his lawsuit is brought pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 18 U.S.C. § 1964(d). However, as discussed below, he has failed to state claims under any of these statutes.

### 1. 42 U.S.C. § 1981

A § 1981 claim requires a plaintiff to allege facts supporting the following elements: (1) he is a member of a racial minority; (2) defendants intentionally discriminated on the basis of race; and (3) the discrimination occurred in regards to one of § 1981's enumerated activities, such as the right to make and enforce contracts. Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam). Plaintiff has not alleged that he is a member of a racial minority, nor could he plausibly do so. Any purported claim under 42 U.S.C. § 1981 is frivolous and must be dismissed.

### 2. 42 U.S.C. § 1983

Under § 1983, "'anyone acting under color of any [state] statute, ordinance, regulation, custom, or usage,' who causes a United States citizen to be deprived 'of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.'" Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008) (quoting 42 U.S.C. § 1983). A plaintiff seeking relief under § 1983 "must allege that (1) the challenged conduct was attributable to a person acting under color of state law, and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution." Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted).

The Court now examines the allegations in Plaintiff's ten causes of action to determine whether they state any colorable claim under § 1983.

### a. First Cause of Action

Plaintiff alleges that the County, Rizzo, Zambito, Friedman, the Zickl Brothers, and Judge Noonan have "set up a corrupted Judicial System in Genesee County based upon nepotism." (Comp. ¶ 45; see also id. ¶¶ 46-64). For instance, Plaintiff alleges, "Defendants controlled what attorneys were assigned in the Genesee Courts in entirety, including the Family Court, they controlled the Judicial Decisions coming from the bench, they controlled each and

every aspect of the judicial system in Genesee County." (Id. ¶ 52). Plaintiff then repeats his allegations from his duplicative Rule 60(b) motions that he filed in 2016 in all of his cases in this Court, regarding the family relations between Judge Noonan and the Zwickl Brothers. Plaintiff asserts that as "a result of the foregoing violations and judicial corruptions" by these defendants, he "has sustained prolonged incarceration, lost [sic] of family ties, lost [sic] of inheritance, loss of legal fees, lost [sic] of equity, lost [sic] of personal property, and violations of his constitutional rights." (Id. ¶ 62).

Plaintiff has not adequately alleged personal involvement by Rizzo and Zambito in the claims of purported constitutional violations. See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); further quotation omitted). The first cause of action must be dismissed as to Rizzo and Zambito on this basis.

With regard to the County's alleged liability, "a municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury." Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 166 (1993) (citing Monell v. New York City

<u>Dept. of Soc. Servs.</u>, 436 U.S. 658 (1978)). Plaintiff does not have a viable claim against the County because he has failed to allege any non-conclusory, non-speculative facts showing that there is a county-wide policy, "unspoken or otherwise—that violates the Federal Constitution." <u>5 Borough Pawn, LLC v. City of N.Y.</u>, 640 F. Supp.2d 268, 300 (S.D.N.Y. 2009).

Next, Plaintiff's allegations that the defendants named in this cause of action established a "corrupt" and "biased" judicial system in the County are factually vague, fail to ascribe any particular unconstitutional acts to Friedman, the Zickl Brothers and Judge Noonan, and consist almost entirely of legal conclusions. Because "they are no more than conclusions[,]" they "are not entitled to the assumption of truth[,]" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009), by this Court. In other words, the Court can disregard them in determining whether Plaintiff has stated a plausible claim—which he has not done. Moreover, Plaintiff does not allege any particular injury to himself, apart from the fact of his 2004 criminal conviction. In addition to lacking an arguable basis in law or fact, the first cause of action is barred by the doctrine of <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), which requires that a plaintiff seeking money damages under § 1983 "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal

-8-

court's issuance of a writ of habeas corpus." <u>Heck</u>, 512 U.S. at 486–87 (citations omitted). Plaintiff's criminal conviction remains intact, and therefore his contention that it was procured by the allegedly "corrupt" and "biased" judicial system in the County is barred by <u>Heck</u>.

The first cause of action lacks an arguable basis in fact or law and is dismissed.

### b.   Second Cause of Action

For his second cause of action (Comp. ¶¶ 65-78), Plaintiff asserts that the County, Friedman, Judge Noonan, and Rizzo "incarcerated [Plaintiff] from February 2002 through October 2003 unlawfully, illegally, and with specific malicious intent." (<u>Id.</u> ¶ 66). He asserts that these defendants "intentionally circumvented a indictment by securing a waiver of indictment for SCI 02-15 that they knew to be unlawful," because it "did not comply with [New York Criminal Procedure Law ("C.P.L.")] § 195.10" given that Plaintiff, at that time, "was charged with a A-1 felony." These allegations relate to the following events, which have been litigated *repeatedly* by Plaintiff in state and federal court: On March 4, 2002, Plaintiff was charged with attempted first-degree murder, first-degree reckless endangerment, fourth-degree criminal possession of a weapon, and second-degree criminal possession of marijuana, in connection with Plaintiff's firing of a shotgun during stand-off between with the police following the repossession

of his propane tank regulator. Through his attorney, Joel Krane, Esq., Plaintiff waived his right to an indictment and pled guilty to the lesser included charge of attempted second-degree murder and second-degree criminal possession of marijuana. He was sentenced on April 5, 2002, to an aggregate term of 10 years in prison. However, Plaintiff filed a pro se motion to vacate the judgment pursuant to C.P.L. § 440.10, arguing that the waiver of the indictment was invalid. On October 7, 2003, Judge Noonan granted the motion. On October 23, 2003, Mills was re-indicted on two counts of attempted first-degree murder, two counts each of attempted first-degree assault, first-degree reckless endangerment, and third-degree criminal possession of a weapon; and one count of third-degree possession of marijuana. Following a jury trial before Judge Noonan, Plaintiff was convicted of all charges.

The allegations in support of the second cause of action fail to state a claim on which relief may be granted for at least two reasons. First, they are moot, because the waiver of indictment about which he complains actually was *vacated* by Judge Noonan, as noted in the preceding paragraph. Thus, he received all of the relief he could potentially receive on that claim. See Coble v. Unger, No. 1:13-CV-00889-MAT, 2017 WL 1153624, at *3 (W.D.N.Y. Mar. 28, 2017) ("Petitioner's habeas claim based on the trial court's sentencing error is moot, because the Appellate Division gave him

all of the relief that he could potentially receive as to this claim.") (citation omitted).

Second, to the extent that Plaintiff suggests that the infirmities in the waiver of indictment in the first felony information against him somehow tainted the subsequent indictment, i.e., that he continued to be subjected to malicious prosecution and false arrest, these claims are barred as a matter of law on at least two grounds. First, it is clearly established in the Second Circuit that the existence of probable cause is a complete bar to claims for malicious prosecution and false arrest. E.g., Jenkins v. City of N.Y., 478 F.3d 76, 84 (2d Cir. 2007). Where, as here, a § 1983 plaintiff was convicted of the crimes for which he was arrested, that conviction establishes the existence of probable cause and thereby vitiates any claim for malicious prosecution or false arrest. See, e.g., Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986) ("[T]he common-law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution, was and is that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested.") (citations omitted). Second, the malicious prosecution and false arrest claims are barred by the doctrine of Heck, because a judgment in Plaintiff's favor "would necessarily imply the invalidity of his conviction or sentence[.]'" Skinner v. Switzer, 562 U.S. 521, 533 (2011) (quoting Heck, 512 U.S. at 487)).

The Supreme Court has specifically held that success on a malicious prosecution claim necessarily implies the invalidity of a plaintiff's conviction. Heck, 512 U.S. at 485-87. Additionally, false arrest claims are barred by Heck. Duamutef v. Morris, 956 F. Supp. 1112, 1117 (S.D.N.Y. 1997) (holding that the "plaintiff's § 1983 false arrest claim calls into question the validity of his criminal conviction" and was barred by Heck) (citing Heck, 512 U.S. at 486–87 & n. 6); accord, e.g., Cameron v. Wise, No. 09 CIV. 967 PKC JLC, 2011 WL 1496341, at *5 (S.D.N.Y. Apr. 20, 2011), rep. and rec. adopted, No. 09 CIV. 967 PKCJLC, 2011 WL 3479295 (S.D.N.Y. Aug. 4, 2011).

Furthermore, Plaintiff has failed to state a claim for municipal liability under Monell claim against the County, since this cause of action is based solely on what occurred in his particular case. See Gordon v. City of N.Y., No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) ("[The plaintiff]'s complaint does not allege the existence of a municipal policy or custom at all. In his opposition memorandum, [the plaintiff] occasionally uses the phrase 'common policy and practice,' but this allegation is unsupported by anything other than the facts of what occurred in his particular case.") (citations omitted).

The second cause of action accordingly must be dismissed as against all defendants as lacking an arguable basis in fact or law.

###       c.       Third Cause of Action

For his third cause of action (Comp. ¶¶ 79-86), Plaintiff asserts that Friedman, the Zickl Brothers, Gann, Judge Noonan, the County, Zambito, and Rizzo, "intentionally deprived [him] of meaningful access to the courts state and federal" based on the "deceit, fraud, lies, and misstatements, with factually incorrect statements, as to how the defendants were actually related alleging only the Fifth Degree of relations." (Id. ¶ 81). Plaintiff alleges that "in reality they were related within the Second and Third degree of relations," and therefore Judge Noonan, Friedman, and the Zickl Brothers "were disqualified and lacked jurisdiction, any judgment, order, directions, judicial decision, or legal decision issued by them was completely void for lack of jurisdiction based on disqualification." (Id. ¶¶ 82-83).

At the outset, the Court notes that Plaintiff only mentions Gann, Zambito, and Rizzo in one paragraph in this cause of action, and otherwise has failed to set forth any allegations whatsoever regarding their personal involvement in any of the supposed constitutional violations. Additionally, the third cause of action cannot stand against the County because Plaintiff has failed to sufficiently allege a county-wide policy or custom for purposes of imposing municipal liability.

With regard to the substance of this cause of action, Plaintiff's degree-of-kinship allegations fail to state a claim on

which relief may be granted. It is well settled that "most matters relating to judicial disqualification [do] not rise to a constitutional level." Brown v. Doe, 2 F.3d 1236, 1248 (2d Cir. 1993) (quoting FTC v. Cement Institute, 333 U.S. 683, 702 (1948); second alteration in Brown; citing Tumey v. Ohio, 273 U.S. 510, 523 (1927) (noting that "matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion")). "Mere allegations of judicial bias or prejudice do not state a due process violation." Brown, 2 F.3d at 1248 (citing Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 820 (1986)). In light of these well-established principles, Plaintiff's repeated attempts to prevail on his degree-of-kinship grievance have been unsuccessful in state and federal court. In 2008, for instance, the Court (Arcara, D.J./Bianchini, M.J.), found that

> the New York state judicial disqualification rule apparently was not even applicable here because the District Attorney himself (and not the Zickl brothers, who were assistant district attorneys), tried the case. Thus, Judge Noonan was not required to recuse himself under the due process clause merely for an appearance of impropriety based on relationships that did not even qualify for recusal under state law.

Mills v. Poole, No. 06-CV-00842A, 2008 WL 2699394, at *20 (W.D.N.Y. June 30, 2008) (citing Hardy v. United States, 878 F.2d 94, 97 (2d Cir. 1989) (denying similar claim brought by federal habeas petitioner based on 28 U.S.C. § 455(a)'s "appearance of impropriety standard" because it did not raise a constitutional claim; "[w]e do

not think that section 455(a)'s appearance of impropriety standard is mandated by the Due Process Clause, and we doubt that an appearance of impropriety under section 455(a), without more, constitutes the type of 'fundamental defect' that would justify vacating an otherwise lawful sentence under [28 U.S.C.] section 2255") (emphasis omitted)). The Supreme Court has stated that constitutional validity of a judge's qualifications is not called into question unless the judge has a "direct, personal, substantial, pecuniary interest" in reaching a particular conclusion in a case. Tumey, 273 U.S. at 523. Plaintiff has not alleged—nor could he plausibly do so—that Judge Noonan has or had a "direct, personal, substantial, pecuniary interest" in the outcome of Plaintiff's criminal and non-criminal court proceedings. In short, the degree of relationship between the Zickl Brothers and Judge Noonan does not give rise to a constitutional claim.

In addition to lacking an arguable basis in law or fact, Plaintiff's degree-of-kinship claim cannot provide relief under § 1983, because it is barred by the Heck doctrine. Plaintiff's allegations assailing every decision and judgment in which Friedman, the Zickl Brothers, and Judge Noonan were involved as "completely void" based on the degree of kinship between Judge Noonan and the Zickl Brothers clearly call into the question the validity of his criminal conviction, which has never been "reversed on direct appeal, expunged by executive order, declared

invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 486–87 (citations omitted). An additional reason for dismissing the third cause of action is that it is barred by the Heck doctrine.

### d. Fourth Cause of Action

In the fourth cause of action, Plaintiff accuses the County, Zambito, Rizzo, Judge Noonan, Friedman, the Zickl Brothers, Morabito, and Gann of maliciously prosecuting him "from October 2003 to currently in 2016 without legal jurisdiction or lawful authority[.]" Plaintiff has failed to state a claim for malicious prosecution. In order to succeed on a malicious prosecution claim under § 1983, a plaintiff must establish, inter alia, "termination of the [criminal] proceeding in [the] plaintiff's favor." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003). Plaintiff cannot demonstrate that his criminal proceedings terminated favorably to him, and therefore he lacks an essential element of a malicious prosecution claim. See Fulton v. Robinson, 289 F.3d 188, 196 (2d Cir.2002) ("Where a prosecution did not result in an acquittal, it is generally not deemed to have ended in favor of the accused, for the purposes of a malicious prosecution claim, unless its final disposition is such as to indicate the accused's innocence.").

The fourth cause of action must be dismissed because it lacks an arguable basis in fact or law.

### e.  Fifth Cause of Action

For his fifth cause of action, Plaintiff alleges that the County, Rizzo, Judge Noonan, William Zickl, and Friedman conspired to deny him "full access to the courts and fraudulently induced a contract/settlement under false, misleading, and fraudulent pretenses" because "[t]he named defendants, knowing all along [Judge Noonan] was disqualified, and his criminal case, divorce case, and foreclosure judgments were void for lack of jurisdiction persuaded [him] to finally settle the three pending civil cases in the District Court."

As the Court previously discussed, Judge Noonan was not disqualified from presiding over any of Plaintiff's cases. Therefore, the Court rejects as legally and factually baseless Plaintiff's assertion that the various judgments against him were void for lack of jurisdiction. Nor has Plaintiff demonstrated that any of judgments against him were infected by constitutional error, either as a result of Judge Noonan's familial relationships with the Zickl Brothers, or for any other reason. "A violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right. Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights." Fitzgerald v. City of Troy, N.Y., No. 10-CV-451, 2012 WL 5986547, at *23 (N.D.N.Y. Nov. 28, 2012) (citing Malsh v. Austin, 901 F.

Supp. 757, 763-64 (S.D.N.Y. 1995)); accord Trombley v. O'Neill, 929 F. Supp. 2d 81, 97 (N.D.N.Y. 2013). His allegations that the named defendants denied him access to the courts and fraudulently induced him to enter a "contract/settlement" fail to state a cognizable § 1983 claim.

Plaintiff's attack on the validity of his divorce proceeding, such a claim is barred by "the domestic relations exception, under which 'divorce, alimony, and child custody decrees' remain outside federal jurisdictional bounds." Grosso v. Radice, No. 07-CV-3620 JS/WDW, 2009 WL 749906, at *8 (E.D.N.Y. Mar. 16, 2009) (quoting Marshall v. Marshall, 547 U.S. 293, 308 (2006)).

Plaintiff's challenge to the legality of his foreclosure proceeding is barred by the Rooker-Feldman doctrine, which provides that federal district courts lack jurisdiction over suits that are, in substance, appeals from state court judgments. Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005). "[T]o apply Rooker-Feldman, (1) the federal court plaintiff must have lost in state court; (2) the plaintiff must be complaining of injuries caused by the state court judgment; (3) the plaintiff's complaint must invite the district court's review and rejection of that state court determination; and, (4) the state court judgment must have been rendered prior to the start of district court proceedings." McCray v. City of N.Y., No. 03 CIV 10080 DAB, 2007 WL 4352748, at *11 (S.D.N.Y. Dec. 11, 2007) (citing Hoblock, 422 F.3d at 85). The

face of the complaint makes it clear that all of the prerequisites to Rooker-Feldman are fulfilled.

Furthermore, the majority of courts in this Circuit have rejected collateral attacks on state court judgments cloaked in the guise of federal or constitutional claims, and have held that claims that a state court judgment was fraudulently procured are subject to Rooker-Feldman. E.g., Roberts v. Perez, No. 13-CV-5612 JMF, 2014 WL 3883418, at *4 (S.D.N.Y. Aug. 7, 2014) (citing, inter alia, Millman v. PNC Bank Nat'l Ass'n, No. 97-CV-3097(HB), 1998 WL 635548, at *3 (S.D.N.Y. Sept. 16, 1998) (collecting cases)); see also Sorenson v. Wolfson, 96 F. Supp.3d 347, 369 (S.D.N.Y. 2015) ("Courts in this District consistently have held that there is no 'fraudulent procurement' exception to the Rooker-Feldman doctrine.") (citing Lajaunie v. Samuels & Son Seafood Co., 68 F. Supp.3d 432, 437-39 (S.D.N.Y. 2014) (collecting cases), vacated on other grounds, 614 F. App'x 33 (2d Cir. 2015)). Moreover, any "fraudulent procurement" exception would not apply where, as here, the argument was presented to the state court on multiple occasions, and rejected each time. See id. (" state court judgment cannot reasonably be fraudulently procured when the very grounds for the alleged fraud were raised by a motion to reconsider in a state court and rejected.") (citing Reusser v. Wachovia Bank, N.A., 525 F.3d 855, 859-60 (9th Cir. 2008)). While the Second Circuit has not explicitly ruled on the issue, it "has never recognized a

blanket fraud exception to Rooker-Feldman." Johnson, 189 F.3d at 186-87; see also Castiglione v. Papa, 423 F. App'x 10, (2d Cir. 2011) (summary order) (affirming district court decision that Rooker-Feldman applied to state law claims related to the allegedly fraudulent probate of a will); Kropelnicki v. Siegel, 290 F.3d 118, 128 (2d Cir. 2002) (holding that "Kropelnicki's claim regarding the misrepresentation made by defendants to Licari [was barred by Rooker-Feldman because it] is inextricably intertwined with the state court judgment in the underlying debt collection action because she had an opportunity to raise this claim on her motion to open the judgment in state court," "even accepting as true her claim that she was kept out of the state court action in the first instance by the defendants' misrepresentation to Licari that they would not advance the litigation without first contacting him").

To the extent that Plaintiff attempts to assert a claim sounding in fraudulent inducement of a contract, this is a purely state law claim, as he recognizes in his complaint. As such, it does not provide a cognizable basis for § 1983 relief.

Finally, to the extent he challenges his criminal conviction, these allegations are barred by the Heck doctrine for the reasons discussed elsewhere in this Decision and Order.

The fifth cause of action must be dismissed as lacking an arguable basis in fact or law.

### f.    Sixth Cause of Action

As his sixth cause of action, Plaintiff asserts that Judge Noonan "unlawfully entered two judgments against [him] in 2002, one in a divorce action, and two a foreclosure action on [his] house."  This cause of action warrants dismissal for multiple reasons.

It is beyond debate "that state judges are absolutely immune [in § 1983 lawsuits] from liability for their judicial acts[.]" Briscoe v. LaHue, 460 U.S. 325, 334 (1983) (citations omitted). The Supreme Court has explained that "[i]f judicial immunity means anything, it  means that a judge 'will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority.'" Mireles v. Waco, 502 U.S. 9, 12-13 (1991) (quoting Stump v. Sparkman, 435 U.S. 349, 356 (1978)). "[T]he touchstone for [judicial immunity's] applicability was performance of the function of  resolving  disputes  between  parties,  or  of  authoritatively adjudicating private rights." Burns v. Reed, 500 U.S. 478, 500 (1991)  (citation  omitted).  Plaintiff  has  not  alleged  that Judge Noonan engaged in any conduct, apart from his performance of his judicial function, that caused Plaintiff injury. Stated another way, the only wrongful conduct of which Judge Noonan is accused comprises his actions taken in resolving the disputes between Plaintiff and the other parties to the divorce and foreclosure proceedings. As a result, Judge Noonan has absolute immunity, and

the sixth cause of action must dismissed. <u>E.g.</u>, <u>Goddard v. Citibank, NA</u>, No. 04CV5317 (NGG)(LB), 2006 WL 842925, at *6 (E.D.N.Y. Mar. 27, 2006).

Moreover, as stated above, Plaintiff's challenge to the validity of the divorce proceeding is barred by "the domestic relations exception, under which 'divorce, alimony, and child custody decrees' remain outside federal jurisdictional bounds." <u>Grosso</u>, 2009 WL 749906, at *8 (quoting <u>Marshall</u>, 547 U.S. at 308).

The sixth cause of action must be dismissed as lacking an arguable basis in fact or law.

### g.  Seventh Cause of Action

For his seventh cause of action (Comp. ¶¶ 127-35), Plaintiff asserts that Judge Noonan, Friedman, and William Zickl denied him "meaningful access to the courts and a fair and impartial tribunal and issued orders without jurisdiction, or that were and are void." (<u>Id.</u> ¶ 128). Plaintiff complains that notwithstanding their knowledge of his "objections to the Noonan-Zickl relations," "William Zickl appeared in front of his Uncle Judge for settlement of the record in the direct appeal of the 2011 resentence and subsequently was the attorney for the appeal." (<u>Id.</u> ¶¶ 129A, 131). As discussed elsewhere in this Decision and Order, Judge Noonan's degree of relationship to William Zickl did not and does not present a constitutional violation. The seventh cause of action lacks an arguable basis in law or fact and must be dismissed.

### h.    Eighth Cause of Action

For his eighth cause of action, Plaintiff alleges that in 2011, Judge Noonan and Friedman resentenced him, "without jurisdiction, while disqualified, and denied [him] his rights," by "refus[ing] to allow [him] to appear and defend, now knowing why, because [Judge] Noonan would of [sic] been challenged in open court on the record about the nepotism relations." (Comp. ¶¶ 37-38). Plaintiff pursued a direct appeal of his 2011 resentencing in which he argued that Judge Noonan violated his statutory right to be personally present at the time sentence is pronounced, see C.P.L. § 380.40(1), by conducting the resentencing in his absence and without assigning counsel. The Appellate Division, Fourth Department rejected the claim as outside of its jurisdiction because Plaintiff was not adversely affected by any error. People v. Mills, 985 N.Y.S.2d 381, 383 (4th Dep't 2014) ("Inasmuch as the court reimposed that original sentence, "defendant was not adversely affected by any error, because the result, i.e., freedom from having to serve a term of PRS [with respect to this count of the indictment], was in his favor[.]") (quotation omitted; alteration in original). The Appellate Division accordingly affirmed the resentence. Id.

"[T]o comply with the Heck rule, a prisoner, as a prerequisite to maintaining his § 1983 action, must establish that his conviction or sentence has been overturned or invalidated by an

administrative board or a state court or a federal court in a habeas proceeding."

Jenkins v. Haubert, 179 F.3d 19, 24–25 (2d Cir. 1999). Plaintiff has not done so. Nor has he alleged that his suit does not "necessarily imply the invalidity of his conviction or sentence." Heck, 512 U.S. at 487. To the contrary, his complaint specifically asserts the invalidity of his resentencing, which he contends was performed by a state court that lacked jurisdiction.

The eighth cause of action must be dismissed as lacking an arguable basis in fact or law.

### i. Ninth Cause of Action

In support of his ninth cause of action, Plaintiff asserts that Judge Noonan, the County, Zambito, the State, the Zickl Brothers, and Friedman "are continuing the malicious prosecution, denial of constitutional rights, nepotism, and trying to further protect the family criminal enterprise of Noonan-Zickl" in connection with a C.P.L. § 440.10 motion that Plaintiff filed in 2016. Specifically, Plaintiff contends, there is "no possible way legally William Zickl should be appearing as a prosecutor" on behalf of the Genesee County District Attorney's Office in opposition to the § 440.10 motion "when he is one of the corrupted family members and he is only appearing to protect his family's personal interest." (Comp. ¶ 146). Plaintiff asserts that a special prosecutor should be appointed to replace William Zickl. As already

discussed elsewhere in this Decision and Order, Judge Noonan's degree of relationship to William Zickl does not present a constitutional impediment to William Zickl representing the People of the State of New York in opposition to Plaintiff's C.P.L. § 440.10 motion. This cause of action lacks an arguable basis in law or fact and must be dismissed.

### j.    Tenth Cause of Action

Plaintiff, for his tenth cause of action, asserts that "the County, the State, [and] Judge Noonan, apparently thus far point blank refuse to appoint a psychiatric expert" to review Plaintiff's competency. He contends that the "choice of which psychiatric defense to present in any retrial is the clients [sic], not the corrupted attorneys whom Genesee [C]ounty and the State appoint to assist them in their prosecution." This claim is legally infirm for multiple reasons.

It clearly is barred by the Heck doctrine because success on the merits would imply the invalidity of Plaintiff's criminal conviction, which remains intact.

The County has no Monell liability because Plaintiff has failed to allege the existence of an unconstitutional county-wide policy or practice, instead relying solely on what occurred in his own case. See Jones v. Westchester Cnty., 182 F. Supp.3d 134, 159 (S.D.N.Y. 2016) (dismissing Monell claim where the plaintiff merely "detail[ed] an incident that [her] finds objectionable," and "it

does not plead the existence of a municipal policy or custom at all") (citing <u>Pittman v. City of N.Y.</u>, No. 14-CV-4140, 2014 WL 7399308, at *7 (E.D.N.Y. Dec. 30, 2014) ("A <u>Monell</u> claim cannot go forward based on conclusory claims regarding a single incident without more evidence that connects this incident to a municipal policy or practice.")).

The State is entitled to sovereign immunity under the Eleventh Amendment, and must be dismissed as a defendant. <u>See</u> <u>Mamot v. Board of Regents</u>, 367 F. App'x 191, 192 (2d Cir. 2010) ("It is well-established that New York has not consented to § 1983 suits in federal court, and that § 1983 was not intended to override a state's sovereign immunity." (internal and other citations omitted).

Notwithstanding that Plaintiff has "accused [Judge Noonan] of acting maliciously and corruptly," <u>Pierson v. Ray</u>, 386 U.S. 547, 554 (1967), absolute judicial immunity still applies because allegedly improper actions attributed to Judge Noonan were "committed within [his] judicial jurisdiction," <u>id.</u> Therefore, Judge Noonan is insulated from liability for damages for them. <u>See</u> <u>id.</u>

The tenth cause of action lacks an arguable basis in fact or law and is dismissed.

### 3.   42 U.S.C. § 1985

Title 42 U.S.C., Sections 1985(2) and 1985(3) provide for causes of action based on conspiracies to violate a plaintiff's civil rights. Plaintiff, however, has not identified a particular subsection of Section 1985 in his complaint. To make out a claim under Section 1985(2), a plaintiff must show (1) a conspiracy (2) for the purpose of impeding, hindering, obstructing, or defeating, in any manner, (3) the due course of justice in any State, (4) with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws. 42 U.S.C. § 1985(2). A violated constitutional right is a prerequisite to a claim of conspiracy to violate such right. See Curley v. Vill. of Suffern, 268 F.3d 65, 72 (2d Cir. 2001) ("Since plaintiff cannot establish a claim for false arrest or the use of excessive force, he may not maintain a § 1983 cause of action for conspiracy."); Roesch v. Otarola, 980 F.2d 850, 854-55 (2d Cir. 1992) ("Since Roesch cannot maintain a cause of action under section 1983 against the state officer, the District Judge, in the circumstances of this case, properly dismissed the claims that the non-state participants conspired with the officer to deprive Roesch of his constitutional rights."). "Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim

of conspiracy to violate those rights." <u>Fitzgerald v. City of Troy, N.Y.</u>, No. 10-CV-451, 2012 WL 5986547, at *23 (N.D.N.Y. Nov. 28, 2012) (citing <u>Malsh v. Austin</u>, 901 F. Supp. 757, 763-64 (S.D.N.Y. 1995)); <u>Manbeck v. Micka</u>, 640 F. Supp.2d 351, 378 (S.D.N.Y. 2009) ("[A] claim of conspiracy to violate a constitutional right cannot be maintained where no constitutional right was violated.") (citing <u>Singer v. Fulton Cnty. Sheriff</u>, 63 F.3d 110, 119 (2d Cir. 1995) ("[A]lthough the pleading of a conspiracy will enable a plaintiff to bring suit against purely private individuals, the lawsuit will stand only insofar as the plaintiff can prove the <u>sine</u> <u>qua</u> <u>non</u> of a § 1983 action: the violation of a federal right.")).

To assert a claim under Section 1985(3), a plaintiff must allege (1) the existence of a conspiracy; (2) for the purpose of depriving, either directly or indirectly, him of equal protection of the laws; (3) and an act in furtherance of the conspiracy; (4) whereby a person is deprived of any right possessed by a United States citizen. <u>Brown v. City of Oneonta, N.Y.</u>, 221 F.3d 329, 341 (2d Cir. 2000) (citations omitted). "The conspiracy must be motivated by racial animus." <u>Id.</u> (citation omitted). Plaintiff has not alleged that any of the defendants were motivated by racial animus, and therefore he has no plausible Section 1985(3) claim. In addition, as discussed above, Plaintiff has failed to allege any facts showing that the actions concerning him involved any violations of his constitutional rights. This is fatal to his

ability to state a Section 1985(3) claim. <u>See</u> <u>Raffaele v. City of</u> <u>N.Y.</u>, 144 F. Supp.3d 365, 375 (E.D.N.Y. 2015) ("[The] plaintiff's conspiracy claim based on denial of access to the courts in violation of § 1983 is dismissed for failing to allege any underlying violation of his constitutional right to access the courts."); <u>Friends of Falun Gong v. Pac. Cultural Enter., Inc.</u>, 288 F. Supp.2d 273, 279 (E.D.N.Y. 2003) (citations omitted), <u>aff'd</u> <u>sub</u> <u>nom.</u> <u>Friends of Gong v. Pac. Culture</u>, 109 F. App'x 442 (2d Cir. 2004).

Plaintiff's claims under Section 1985 lack an arguable basis in fact or law and are dismissed.

### 4.    18 U.S.C. § 1964(d)

As one of the bases for this Court's jurisdiction, Plaintiff cites 18 U.S.C. § 1964(d). Section 1964 of Title 18 U.S.C. discusses civil remedies available for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 <u>et</u> <u>seq.</u> Section 1964(d) in particular provides that "[a] final judgment or decree rendered in favor of the United States in any criminal proceeding brought by the United States under this chapter shall estop the defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding brought by the United States." 18 U.S.C. § 1964(d). This statutory section has no applicability to the instant action because there is no criminal

proceeding involving the United States against any of the named defendants.

Construing Plaintiff's complaint broadly, he appears to be attempting to allege a civil cause of action under RICO. "[A] RICO claim contains three elements: (1) a violation of 18 U.S.C. § 1962; (2) injury to plaintiff's business or property; and (3) causation of the injury by the violation." Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc., 17 F. Supp. 3d 207, 222 (E.D.N.Y. 2014). Plaintiff's sprinkling the phrase "criminal enterprise" throughout his complaint is insufficient to state a substantive violation of Section 1962(c), which requires "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). "Because the RICO conspiracy claim is dependent upon the Section 1962(c) RICO claim, dismissal of that claim mandates the dismissal of the RICO conspiracy claim." FD Prop. Holding, Inc. v. U.S. Traffic Corp., 206 F. Supp. 2d 362, 373 (E.D.N.Y. 2002) (citations omitted). Moreover, "[b]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 25 (2d Cir. 1990). While a plaintiff is not subject to the heightened pleading requirements of F.R.C.P. 9(b) in pleading a RICO conspiracy, see id. at 26 n. 4, "'a RICO conspiracy claim should be

more than a conclusory add-on at the end of a complaint.'" FD Prop. Holding, Inc., 206 F. Supp.2d at 373 (quotation omitted). Here, Plaintiff's alleged RICO claim is just such a "conclusory add-on". He does not actually employ the term "conspiracy" anywhere in his complaint; nor does he allege "facts to show specifically that the defendants had any 'meeting of the minds' in the alleged violations." 4 K & D Corp. v. Concierge Auctions, LLC., 2 F. Supp.3d 525, 544-45 (S.D.N.Y. 2014); see also, e.g., FD Prop. Holding, Inc., 206 F. Supp.2d at 373-74 (dismissing RICO conspiracy claim where plaintiffs alleged that "'[e]ach of these defendants agreed to commit each of the two or more predicate acts in which they were directly involved, as set forth in detail above[,]'" and "incorporate[d] all the prior allegations" in the complaint; holding that the "allegation of an agreement without more is inadequate to state a claim for RICO conspiracy") (collecting cases)).

Plaintiff's claims under RICO lack an arguable basis in law or fact and must be dismissed.

## III. Leave to Replead is Inappropriate

Generally speaking, the law in this Circuit is that a district court should not dismiss a complaint filed by a pro se litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 704-05 (2d Cir.

1991); see also FED. R. CIV. P. 15(a) ("The court should freely give leave when justice so requires."). Permitting amendment is not required, however, where "the problem with [the litigant's] causes of action is substantive" such that "better pleading will not cure it." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993). In this instance, the deficiencies in Plaintiff's claims against the named defendants are substantive in nature, and extend well beyond the insufficiency of his allegations, even when they "are construed with the utmost of special liberality[.]" Mercer v. Schneiderman, No. 1:11-CV-0490 GTS/DRH, 2011 WL 3652322, at *3 (N.D.N.Y. Aug. 18, 2011) (dismissing pro se complaint with prejudice pursuant to 28 U.S.C. § 1915(e) for failure to state a claim upon which relief can be granted, where, even "construed with the utmost of special liberality, the defects in [the plaintiff's] claims are substantive rather than merely formal, such that any amendment would be futile") (citations omitted).

For purposes of Section 1915(e)(2), "[a] claim is based on an 'indisputably meritless legal theory' when either the claim lacks an arguable basis in law, Benitez v. Wolff, 907 F.2d 1293, 1295 (2d Cir. 1990) (per curiam), or a dispositive defense clearly

exists on the face of the complaint." <u>Livingston v. Adirondack Beverage Co.</u>, 141 F.3d 434, 437 (2d Cir. 1998) (citing <u>Pino v. Ryan</u>, 49 F.3d 51, 53 (2d Cir. 1995)). As discussed above, all of Plaintiff's causes of action lack an arguable basis in fact or law, or are subject to a dispositive defense that is clear from the complaint.

## IV.  Subject Matter Jurisdiction

Lack of subject matter jurisdiction may be raised at any time, either <u>sua</u> <u>sponte</u> by the court, or by a party. <u>Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont</u>, 565 F.3d 56, 62 (2d Cir. 2009). Indeed, it is a court's "obligation to raise the matter of subject matter jurisdiction '*whenever* it appears from the pleadings or otherwise that jurisdiction is lacking.'" <u>Id.</u> (quoting <u>John Birch Society v. National Broadcasting Co.</u>, 377 F.2d 194, 199 (2d Cir. 1967); emphasis in original). When a court finds that it lacks subject matter jurisdiction, it must dismiss the complaint in its entirety. <u>Id.</u> (citing FED. R. CIV. P. 12(h)(3)).

While federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States[],]" 28 U.S.C. § 1331, a lawsuit premised on state law "is not transformed into a suit 'arising under' federal law merely because, to resolve it, the court may need to interpret federal law." <u>Sullivan v. Am. Airlines, Inc.</u>, 424 F.3d 267, 271 (2d Cir. 2005). Thus, under the "well-pleaded

complaint" rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." <u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1, 12 (2003) (quoting <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392 (1987)).

All of Plaintiff's purported causes of action under federal law have been found to lack an arguable basis in law or fact, and accordingly have been dismissed with prejudice. The only other potential basis for subject matter jurisdiction—diversity jurisdiction—is lacking here. Diversity jurisdiction gives federal district courts jurisdiction over suits where the plaintiff and the defendant are of diverse citizenship. <u>See</u> <u>Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC</u>, 692 F.3d 42, 48 (2d Cir. 2012) (stating that diversity jurisdiction exists "between, <u>inter</u> <u>alia</u>, 'citizens of a State and citizens or subjects of a foreign state'") (quoting 28 U.S.C. § 1332(a)). Here, however, Plaintiff's complaint indicates that he and the named defendants are all New York domiciliaries, and therefore they are not of diverse citizenship. The Court accordingly has no basis on which to retain jurisdiction over Plaintiff's claims based on the New York State constitution, New York State common law, and New York State statutory law. <u>See</u>, <u>e.g.</u>, <u>Adames v. Taju</u>, 80 F. Supp.3d 465, 468 (E.D.N.Y. 2015) (court lacked diversity jurisdiction over state-law

breach of contract claim by <u>pro</u> <u>se</u> litigant, where both parties resided in the same state).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for <u>in pauperis status</u> is granted. Plaintiff's complaint is dismissed with prejudice, without leave to re-plead. Plaintiff's miscellaneous motions are denied as moot. The Clerk of Court is directed to close this case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith.

**SO ORDERED.**

**S/Michael A. Telesca**
_____
     HON. MICHAEL A. TELESCA
    United States District Judge

Dated:    April 13, 2017
        Rochester, New York.